**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF FLORIDA**

Case No.          -Civ-
Judge
Magistrate Judge

| | |
|---|---|
| ADAM WILSON, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | COMPLAINT- CLASS ACTION |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| vs. | |
| YUHE INTERNATIONAL, INC.; ZHENTAO GAO; HU GANG; and CHENGXIANG HAN, | |
| Defendants. | |

**PLAINTIFF'S CLASS ACTION COMPLAINT**

Plaintiff Adam Wilson  ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against Defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Yuhe International, Inc. ("Yuhe" or the "Company"), securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## **NATURE OF THE ACTION**

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased the securities of Yuhe between December 31, 2009 and June 23, 2011, inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of federal securities laws.

2.      During the Class Period, Yuhe issued materially false and misleading statements and omitted to state material facts that rendered their affirmative statements misleading as they related to the Company's financial performance, business prospects, and true financial condition.

3.      Particularly, on June 15, 2011, an analyst and investigator from, GeoInvesting.com ("Geo", or "Geo's Investigator"), partook in a series of phone calls with Mr. Zheng Xuejiang ("Mr. Zheng"), Chairman and General Manager of Weifangshi Dajiang Qiye Group Co. Ltd. ("Dajiang" or "Dajiang Corporation") As a result, the legitimacy of the purchase agreement Yuhe alleges occurred between their Company and Dajiang Corporation commenced for the acquisition of 13 breeder farms totaling approximately $15.45 million, was brought into question.

4.      The calls between Geo's Investigator and Mr. Zheng also raised a number of potential red flags of fraud regarding the accuracy of the financial statements Yuhe has filed with the SEC for fiscal years ended December 31, 2009 and December 31, 2010, as well as the authenticity of documents they have been providing as proof that the agreement in fact took place.

5.      When this adverse information began to enter the market, it caused Yuhe's stock to lose more than half of its value.  On the following day, June 17, 2011, NASDAQ halted trading in Yuhi's stock.

6.      Later, on June 23, 2011, the Company filed an 8-K with the SEC announcing that the Company's auditor had resigned, "Based on management's misrepresentation and failure to disclose material facts surrounding certain acquisition transactions and off balance sheet related party transactions, our auditor's report on the financial statements of Yuhe International, Inc. (Commission File No. 001-34512) for the year ended December 31, 2010 (report dated March 31, 2011) should no longer be relied upon and must no longer be associated with the financial statements."

**JURISDICTION AND VENUE**

7.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act, and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

8.      This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

9.      Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C.  § 1391(b).

10.      In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

11.      Plaintiff Adam Wilson, as set forth in the accompanying certification, incorporated by reference herein, purchased Yuhe securities at artificially inflated prices during the Class Period and has been damaged thereby.

12.      Defendant Yuhe International, Inc., is a Nevada Corporation with its principal executive offices in Shandong Province, People's Republic of China ("PRC").  Yuhe claims to supply day-old chickens raised for meat production or broilers. The Company primarily supplies day-old broilers, to broiler farms and integrated chicken companies that partake in the breeding, hatching, farming, slaughtering and food processing of broilers, in order to raise them to market-weight broilers.  At all relevant times, the Company's stock was actively traded on the NASDAQ under ticker "YUII."

13.      Defendant Zhentao Gao ("Gao") at all relevant times herein was the Company's Chief Executive Officer and Chairman of the Board of Directors since March 12, 2008.

14.      Defendant Chengxiang Han ("Han") was the Company's Chief Production Officer since June 13, 2008.

15.      Defendant Hu Gang ("Gang") was the Company's Chief Financial Officer since June 13, 2008.

16.     Gao, Han, Gang are collectively referred to hereinafter as the "Individual Defendants."

17.     During the Class Period, each of the Individual Defendants, as senior executive officers, agents, and/or directors of Yuhe and its subsidiaries and affiliates, was privy to non-public information concerning the Company's business, finances, products, markets, and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof, and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or recklessly disregarded the fact that adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

18.     The Individual Defendants participated in the drafting, preparation, and/or approval of the various public, shareholder, and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with Yuhe, each of the Individual Defendants had access to the adverse undisclosed information about Yuhe's financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about Yuhe and its business issued or adopted by the Company materially false and misleading.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

19.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all persons who purchased Yuhe during securities during the Class Period and who were damaged thereby. Excluded from the Class are Defendants, the officers and directors of the Company at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

20.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period Yuhe's securities were actively traded on the

NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds of members in the proposed Class.  Members of the Class may be identified from records maintained by Yuhe or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice customarily used in securities class actions.

21.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

22.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

23.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)   whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)   whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Yuhe; and

(c)   to what extent the members of the Class have sustained damages and the proper measure of damages.

24.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

25.     The Class Period begins on December 31, 2009 when Yuhe filed an 8-K announcing they entered into a materially definitive agreement with Weifang Dajiang

Corporation. The terms of the agreement between Yuhe and Dajiang was outlined as follows: (a) Dajiang will transfer to Yuhe a total of thirteen breeder farms (b) with a total area of 560 mu (approximately 37 hectares) (c) for a total consideration of RMB 103,870,000. The payment for the farms would be paid in two installments. The first payable on or prior to December 31, 2009 and the second consisting of the remaining balance payable within two months subsequent to the date the farms were completely transferred (expected date March 2010).

26.     In an 8-K filed on January 4, 2010 the Company issued a press release entitled,

**" Yuhe International, Inc. Increases Number of Breeder Farms to 27"**
- *Acquires 13 breeder farms*
- *Purchases land use rights for a new breeder farm*

The purchase agreement Yuhe entered, of thirteen breeder farms built "from 1996 to 1999, for which PRC Yuhe [also] acquired all the ground buildings as well as the land use rights for 36 years". Furthermore, the Company anticipated spending RMB 17 million (approximately $2.5 million) towards renovating the thirteen facilities. In addition, the Company believed the newly acquired farms, would increase their total capacity of parent breeders by 600,000 sets by the culmination of 2010's third quarter. Mr. Zhentao Gao, CEO of Yuhe is even quoted stating, "by purchasing these thirteen breeder farms, we are able to quickly increase our production capacity of day-old broilers. We will leverage our expertise in modern chicken breeding disease prevention and animal husbandry science to capture the tremendous market potential for poultry in China."

27.     On March 8, 2010, the Company filed an 8-K, which included their March 2010 investor presentation. (a) expands capacity by 60% (b) lowers depreciation cost: bid price 15%-20% lower than own-construction cost (c) payback period is expected to be 2 - 3 years (d) new relationships with Dajiang's distributors (e) gain a new group of skilled employees with approximately 10 years of breeding experience (f) cash flows from operations could support the continued ongoing business

28.     In the FY 2009 10-K Yuhe filed with the SEC on March 31, 2010, PRC Yuhe claims it entered into an agreement to purchase thirteen breeder farms from Dajiang Corporation. The total consideration for the purchase agreement totaled RMB 103,870,000 (equivalent to

approximately $15,191,891). Payment for the total amount was divided into two, the total Amount Paid as of December 31, 2009 and the remaining Balance as of December 31, 2009; $12,139,472 and $3,052,419 respectively. As stated in Yuhe's 2009 10-K, they expected to complete payment for the acquisition of the breeder farms at the "End of May 2010."

29.     Moreover, in the Company's FY 2009 10-K they attribute and record, a $12,139,473 cash outflow, posted to the account titled long term assets, "Deposit paid for the purchase of buildings." This amount represents the first installment of the purchase agreement Yuhe paid Dajiang Corporation by December 31, 2009 for the 13 farms.

30.     In an 8-K the Company filed on August 16, 2010, the Company announced the financial results of their 2010 Q2. In the press release, the Company states that "as of August 13, 2010, six of the thirteen breeder farms which were purchased in 2009 and 2010 have begun operations and the other seven farms are expected to commence operations by the end of 2010."

31.     In an 8-K filed on November 16, 2010, Yuhe issued a press release announcing their 2010 third quarter results. The article's caption, which was published on November 15, 2010, read:

*~Revenues Increased 62.4% to $21.4 Million~*
*~Net Income and Diluted EPS Increased 75.7% and 73.1%, Respectively~*

The article states that "Of the 13 farms purchased, nine have begun operations and the other four farms are expected to commence operations by the end of the first quarter of 2011." Yuhe's CEO, Mr. Gao, further discloses that the Company "began to generate revenues from the new parent breeders that we purchased in Shangong Province in 2009 and early 2010."

32.     In Yuhe's 2010 10-K for fiscal year ending December 31, 2010, PRC Yuhe they now state that it "has paid 80%, of the total consideration $15,709,792, or RMB 83,000,000, equivalent to approximately $12,553,314 and that there is a remaining balance of RMB 20,870,000, equivalent to approximately $3,156,478." The Company expects to pay this amount in full by the end of December 2011.

33.     In an 8-K filed on April 1, 2011, Yuhe issued a press release providing their Fiscal Year 2010 highlights. The article, published on March 31, 2011, presented two primary 2010 trends emphasizing that "net revenue increased 43% year over year to $67.5 million" and that

"gross profit increased 44.5% year over year to $24.2 million." In addition, Yuhe's CEO, Mr. Gao, specifies, the Company's operational side, "also achieved exceptional progress in fiscal year 2010. The first acquisition conducted by the Company in December 2009 of 13 breeder farms in Shandong Province started contributing to our production in fiscal year 2010, and currently nine out of the 13 farms are fully operational."

34.    On May 16, 2011, the Company filed an 8-K with the SEC. In their May 16th press release, they state, that Yuhe had "officially taken possession of 13 breeder farms from its previous acquisitions conducted in December 2009 and July 2010." Of the 13 breeder farms acquired, "11 [of the] breeder farms were taken over from Dajiang Corporation." As discussed in further detail below, Yuhe never acquired 11 breeder farms from Dajiang, as the Company failed to withhold their side of the purchase agreement requiring them to pay the 80% of the total consideration.

**Misstatements in Offering Documents During the Class Period**

35.    On June 2, 2010 Yuhe filed Form S-3 with the SEC in order to sell Company common stock for a maximum price of $40,000,000. Included in the filing is a prospectus, comprising information pertaining to the company. Yuhe clearly asserts that currently, they have "28 breeder farms with 15 in operation and two hatcheries with a total annual capacity of 1.8 million sets of breeders and 116 hatchers through our wholly-owned subsidiary, Weifang Yuhe Poultry Co. Ltd., or PRC Yuhe. The remaining 13 breeder farms were purchased in December 2009 and are undergoing renovations. They are expected to be in full operation by the third quarter of 2010."

36.    On October 19, 2010, Yuhe filed 424B3, their preliminary prospectus supplement, and on October 20, 2010, filed 424B5 the Company's final prospectus supplement to Prospectus dated effective June 23, 2010. Within both the preliminary and final prospectus supplements, the Company discloses that they currently, have "33 breeder farms with 20 in operation and three hatcheries with a total annual capacity of 2.2 million sets of breeders and 156 hatchers through our wholly-owned subsidiary, Weifang Yuhe Poultry Co. Ltd., or PRC Yuhe. The remaining 13 breeder farms (including eight purchased in December 2009 and five purchased in July 2010) are undergoing renovations and they are expected to be in full operation by the first quarter of 2011."

**TRUTH BEGINS TO EMERGE**

37.     Throughout the Class Period, the Defendants made false and/or misleading statements, and failed to disclose material adverse facts about the Company's business, operations, prospects, performance, and internal controls.

38.     The claims made above by Yuhe in their financial statements as well as the statements made by Yuhe's executive officers, alleging they had: (a) entered into a purchase agreement with Weifang Dajiang Corporation; (b) completely paid both the initial amount and remaining balance of the agreement's total consideration to Dajiang Corporation; (c) acquired the majority of the thirteen breeder farms; (d) that the Company began renovating the farms, (e) and the Company's financial statements themselves for the fiscal year ended December 31, 2010 was materially false and misleading.

39.     On or about June 16, 2011 an investigative report (the "Report") concerning Yuhe International, Inc., was published, on a market research website, entitled GeoInvesting.com. According to the Report, "Yhue created an illusion of acquiring Dajiang's farms to present a strong front and solid business for its SEC filings."

(a)     Furthermore, inclusive in The Report are transcripts of four phone calls, which took place between June 8, 2011 and June 15, 2011 between Geo's Investigator and Mr. Zheng, Chairman and General Manager of Weifang City Dajiang Enterprise Group Co., Ltd. All four phone calls bring into question the legitimacy of the claims Yuhe repeatedly publishes in their financial statements and the statements made by their executive officers. Specifically, addressing the alleged purchase agreement and acquisition by Yuhe from Dajiang Corporation for 13 breeder farms.

(b)     On June 8, 2011 Geo Investigator placed the first phone call to Mr. Zheng. As noted the "purpose of the call was to determine if the acquisition Yuhe claims it made of 13 chicken farms from Dajiang actually took place." Upon Geo raising this question to Mr. Zheng he immediately interjects, "That is nonsense. There was no such thing [acquisition of farms] at all…Yuhe Company, Yuhe is a scam company for cheating money. There was no such an acquisition at all…Yuhe is simply a scam to raise money…No acquisition. No acquisition."

(c)     Geo placed their second phone call to Mr. Zheng the following day, June 9, 2011,

Class Action Complaint for Violation of the Federal Securities Laws

attempting to gain additional information regarding Yuhe's claimed acquisition from Dajiang of the thirteen breeder farms. Geo inquires if Yuhe ever approached Dajiang regarding their interest in acquiring thirteen chicken breeder farms. Mr. Zheng tells Geo, "We did have a brief talk one time…But, I found out Yuhe is not a good company…It wants our assets to be under its name. Yuhe made it clear that it is doing this because it went public in the US, just for the purpose of cheating and raising money…They told us to make a fake deal – it's like 'I lease your facilities to make a fake deal for my US listing. You help me and I can list in the United States. In the end, this is to cheat more American's money…No. No. We did not proceed with this deal."

(d)     The conversation between Geo and Mr. Zheng, during the Third Call, primarily focuses on the validity of the statements made by Yuhe regarding the payment and physical acquisition of the 13 breeder farms in question:

> "<u>Geo:</u> It claimed that, let me recollect this, it claimed that it paid USD 12 million to you.
> <u>Zheng:</u> What kind of joke is that? It did not pay me even one dollar. It does not have any evidence.
> <u>Geo:</u> Oh.
> <u>Zheng:</u> Even no one penny.
> <u>Geo:</u> Oh. Even no one penny.
> <u>Zheng:</u> This is a lie."

Mr. Zheng then told Geo Investigators that Mr. Gao the CEO of Yuhe International, came to see him earlier that day. Mr. Zheng told Geo Investigators that in efforts of reassuring him, "[Mr. Gao revealed that it] is disclosed in the United States in English. Domestically, no people and no Chinese disclosure at all. I did not imagine that it will hurt you." Mr. Gao here admits to Mr. Zheng that the statements pertaining to the purchase and acquisition of the 13 breeder farms, which were included in financial statements they filed with the SEC, were materially false and misleading.

(e)     Later that evening, the Fourth Call between Geo Investigators and Mr. Zheng took place. Geo notifies Mr. Zheng that earlier in the day he received a Transfer Agreement belonging to the alleged purchase agreement. Mr. Zheng responds, "Oh. I already know this. This is a series of lies. A series of lies…I receive nothing [no money]. All these are forged…I already tell you

Class Action Complaint for Violation of the Federal Securities Laws

this story. You shall know this. I prepare to sue it."

40.     The revelations caused the Company's stock to fall on June 16, 2011 from a prior closing price of $4.08/share to $1.96/share on June 16, and the stock continued to fall to $1.20/share on June 17, 2011 before trading in the stock was halted that day.

41.     On June 20, 2011 the Company filed an 8-K with the SEC announcing that the Company's independent auditor had resigned.  The 8-K also states that the auditor resigned "Based on management's misrepresentation and failure to disclose material facts surrounding certain acquisition transactions and off balance sheet related party transactions, our auditor's report on the financial statements of Yuhe International, Inc. (Commission File No. 001-34512) for the year ended December 31, 2010 (report dated March 31, 2011) should no longer be relied upon and must no longer be associated with the financial statements."

**Applicability of Presumption of Reliance:**

**<u>Fraud-on-the-Market Doctrine</u>**

42.     At all relevant times, the market for Yuhe's common stock was an efficient market for the following reasons, among others:

(a)     Yuhe's stock met the requirements for listing, and is listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     During the class period, on average, over several hundreds of thousands of shares of Yuhe stock were traded on a weekly basis, demonstrating a very active and broad market for Yuhe stock and permitting a *very strong* presumption of an efficient market;

(c)     As a regulated issuer, Yuhe filed periodic public reports with the SEC and was eligible and did file short form registration statements with the SEC on Form S-3 during the Class Period;

(d)     Yuhe regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(e)     Yuhe was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace;

(f)     Numerous NASD member firms were active market-makers in Yuhe stock at all times during the Class Period; and

(g)     Unexpected material news about Yuhe was rapidly reflected and incorporated into the Company's stock price during the Class Period.

43.     As a result of the foregoing, the market for Yuhe's common stock promptly digested current information regarding Yuhe from all publicly available sources and reflected such information in Yuhe's stock price.  Under these circumstances, all purchasers of Yuhe's common stock during the Class Period suffered similar injury through their purchase of Yuhe's common stock at artificially inflated prices, and a presumption of reliance applies.

### FIRST CLAIM

**Violation of Section 10(b) Of**

**The Exchange Act Against and Rule 10b-5**

**Promulgated Thereunder Against All Defendants**

44.      Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45.     This claim is brought against Yuhe and all of the Individual Defendants.

46.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including plaintiff and other Class members, as alleged herein; and (2) cause plaintiff and other members of the Class to purchase Yuhe's common stock at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

47.     Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that

operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Yuhe's common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

48.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Yuhe as specified herein.

49.     These Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Yuhe's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Yuhe and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of Yuhe's common stock during the Class Period.

50.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) the Individual Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each of these defendants, by virtue of his or her responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's financial condition; (3) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (4) each of these defendants was aware of the

Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

51.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.   Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Yuhe's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its common stock.   As demonstrated by Defendants' overstatements and misstatements of the Company's financial condition throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

52.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Yuhe's common stock was artificially inflated during the Class Period.   In ignorance of the fact that market prices of Yuhe's publicly-traded common stock were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Yuhe common stock during the Class Period at artificially high prices and were or will be damaged thereby.

53.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.   Had Plaintiff and the other members of the Class and the marketplace known the truth regarding Yuhe's financial results, which were not disclosed by defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Yuhe common stock, or, if they had acquired such

common stock during the Class Period, they would not have done so at the artificially inflated prices that they paid.

54.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

55.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

56.     This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

**SECOND CLAIM**

**Violation of Section 20(a) Of**

**The Exchange Act Against the Individual Defendants**

57.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

58.     The Individual Defendants acted as controlling persons of Yuhe within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

59.     In particular, each Defendant had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or

influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

60.     As set forth above, Yuhe and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.

61.     By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

62.     This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of securities giving rise to the cause of action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action, designating Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Class Counsel;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

Class Action Complaint for Violation of the Federal Securities Laws

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:  June 24 2011                    Respectfully submitted,

                                        **THE ROSEN LAW FIRM, P.A.**

                                        _____
                                        Laurence Rosen, Esq.
                                        (Fla. Bar No. 0182877)
                                        lrosen@rosenlegal.com

                                        275 Madison Avenue, 34th Floor
                                        New York, NY  10016
                                        Telephone: (212) 686-1060
                                        Fax: (212) 202-3827

                                        Attorneys for Plaintiff

## CERTIFICATION

The individual or institution listed below (the "Plaintiff") authorizes the Rosen Law Firm, P.A. to file an action or amend a current action under the federal securities laws to recover damages and to seek other relief against Yuhu International Inc. ("YUII"), and certain of its officers and directors. The Rosen Law Firm, P.A. agrees to prosecute the action on a contingent fee basis not to exceed one-third of any recovery and will advance all costs and expenses. Any legal fees and expenses will be determined by, and payable, only upon order of the U.S. District Court.

Plaintiff declares, as to the claims asserted under the federal securities laws, that:

1.      I have reviewed the complaint against YUII and certain of its officers and directors and I retain the Rosen Law Firm, P.A. as counsel in this action for all purposes.

2.      I did not engage in transactions in the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in this or any other litigation under the securities laws of the United States.

3.      I am willing to serve as a lead plaintiff either individually or as part of a group. A lead plaintiff is a representative party who acts on behalf of other class members in directing the action, and whose duties may include testifying at deposition and trial.

4.      The following is a list of all of the purchases and sales I have made in YUII securities during the class period set forth in the complaint. I have made no transactions during the class period in the debt or equity securities that are the subject of this lawsuit except those set forth below.

| Number of Shares Purchased or Sold | Date(s) Purchased | Price Paid Per Share | Date(s) Sold (if applicable) | Price Sold Per Share |
|---|---|---|---|---|
| 1000 | 29/3/11 | $ 6.8583 | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |

PLEASE FAX CERTIFICATION TO ROSEN LAW FIRM at (212) 202-3827 OR EMAIL TO INFO@ROSENLEGAL.COM OR SEND BY U.S. MAIL TO:
THE ROSEN LAW FIRM PA
275 MADISON AVENUE, 34th FLOOR
NEW YORK, NY 10016

5.    I have not, within the three years preceding the date of this certification, sought to serve or served as a representative party on behalf of a class in an action involving alleged violations of the federal securities laws, except: for the following company(ies):

6.    I will not accept any payment for serving as a representative party beyond my pro rata share of any recovery, except reasonable costs and expenses, such as travel expenses and lost wages directly related to the class representation, as ordered or approved by the court pursuant to law.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 20 day of June, 2011.

REDACTED

Signature:
Name: ADAM WILSON
Address:

Phone:
E-mail:

Item. 4 (continue from prior page if needed)

| Number of Shares Purchased or Sold | Date(s) Purchased | Price Paid Per Share | Date(s) Sold (if applicable) | Price Sold Per Share |
|---|---|---|---|---|
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |

PLEASE FAX CERTIFICATION TO ROSEN LAW FIRM at (212) 202-3827
OR EMAIL TO INFO@ROSENLEGAL.COM OR SEND BY U.S. MAIL TO:
THE ROSEN LAW FIRM PA
275 MADISON AVENUE, 34th FLOOR
NEW YORK, NY 10016

2